UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                          )
Andre Lyons,              )
                          )
        Petitioner,       )
                          )     Civil Action No. 06-2008 (GK)
    v.                    )
                          )
CCA/Correctional Treatment)
Facility,                 )
                          )
                          )
        Respondent.       )
_____)
```

**MEMORANDUM OPINION**

Petitioner, Andre Lyons ("Lyons"), brings this action pro se against the CCA Correctional Treatment Facility[1] for a Writ of Habeas Corpus. Upon consideration of the Petition, Opposition, Reply, and the entire record herein, and for the reasons stated below, Lyons' Petition is **denied**.

**I.   BACKGROUND**

---

[1] Lyons is presently confined at the FCI Fairton in Fairton, New Jersey. At the time the petitioner filed his petition, however, he was an inmate at the District of Columbia Correctional Treatment Facility, where his custodian was Warden John Caulfield. Warden Caulfield is within this Court's jurisdiction and because the Court had jurisdiction over the petitioner's custodian when the Petitioner filed his petition, this Court retains jurisdiction despite the petitioner's subsequent transfer. See Rumsfeld v. Padilla, 542 U.S. 426, 439 (2004) (if district court had jurisdiction over petitioner's custodian when petitioner filed petition, court maintains jurisdiction if petitioner thereafter is transferred to another jurisdiction). Because Lyons' current warden, Paul M. Schultz, is the proper respondent, the Court will substitute Warden Schultz for the CCA/Correctional Treatment Facility. See Blair-Bey v. Quick, 151 F.3d 1036, 1039 (D.C. Cir. 1998).

Lyons was sentenced on April 10, 1991 ("Old Sentence") in the District of Columbia Superior Court to 3 to 9 years for Burglary II and 1 to 3 years for Theft I, to be served consecutively for a total of 4 to 12 years.  He received pretrial jail credit for time in custody of 313 days from June 1, 1990 to April 9, 1991, as well as 37 days from October 10, 1989 to November 15, 1989.  The original full-term date was April 24, 2002.

On May 7, 1993,[2] Lyons was released on parole.  He was re-arrested on November 30, 1993 for possession with intent to distribute cocaine while armed.  While Lyons was in custody on that charge, the District of Columbia Board of Parole ("Board") issued a parole violator warrant on February 23, 1994 based on criminal and non-criminal violations of parole.  See Def.'s Opp'n Ex. C at 1; Def.'s Opp'n Ex. D.  Lyons pled guilty and, on June 3, 1994, was sentenced to 30 to 90 months imprisonment ("New Sentence"). Specifically, the Judgment and Commitment Order provided for a sentence of "(30) thirty to (90) ninety months, concurrent." Def.'s Opp'n Ex. E.  On August 14, 1996, the Board executed the parole violator warrant, revoking Lyons' parole so that he resumed service of his Old Sentence.  Def.'s Opp'n Ex. F.

Lyons was again granted parole on August 15, 1997, February 26, 2001, May 15, 2003, and April 29, 2005; parole was revoked each time.  Based on all of these factors, the United States Parole

---

[2] Lyons indicates that his parole date was May 8, 1993.

Commission ("Commission")[3] calculates his full-term sentence date as October 7, 2009, with a mandatory release date of October 31, 2008.[4]

**II. Lyons' Petition Is Denied Because the United States Parole Commission's Calculation of His Sentence Does Not Violate Due Process**

Lyons' habeas corpus claim arises from the Board's decision to revoke his parole on the Old Sentence only after he had served the New Sentence. He claims that he "has been denied credit for time spent in custody because of numerous errors by the United Sts [sic] Parole Commission and the Federal Bureau of Prisons in the calculation of [his] sentence." Pet. at 6. Specifically, he argues that the New Sentence expressly indicated that it was to run "concurrent," and consequently it was a violation of due process for the Commission to calculate it as consecutive to the Old Sentence. Under a proper calculation, he claims, he has completed both of those sentences. Lyons also challenges the forfeiture of his "good time" credits.

---

[3] Lyons was transferred to the jurisdiction of the Commission pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997. Public Law No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998) (codified at D.C. CODE § 24-131 (formerly § 24-1231)).

[4] The sentence monitoring information included as an exhibit to Lyons' Reply provides that, as of March 5, 2007, Lyons' mandatory release date is December 9, 2008. Petitioner's Reply, Sentence Monitoring Computation Data, at 2.

When a parole violator warrant is executed, the prisoner resumes serving the unexpired portion of his initial sentence. Hill v. District of Columbia Board of Parole, 766 A.2d 497, 499 (D.C. 2000). A parolee is taken back into custody on the unexpired portion of his initial sentence, and resumes serving that sentence, only after the parole violator warrant has been executed. See id. Section 24-221.03 of the District of Columbia Code provides for credit only when the time spent in custody was "a result of the offense for which sentence was imposed." D.C. CODE § 24-221.03(a) (formerly § 24-431). Accordingly, until a parole violator warrant is executed, a parolee's incarceration on an subsequent, new sentence is not credited to his prior sentence. See Hill, 766 A.2d at 499.

It is not a violation of a parolee's due process rights to lodge a parole violator warrant as a detainer and execute the warrant only after the new sentence is completed. Marshall v. Hyman, No. 93-2259, 1994 WL 413330, at *1 (D.D.C. July 18, 1994) (citing Moody v. Daggett, 429 U.S. 78, 79 (1976)). To the contrary, as the Supreme Court has reasoned, "it is appropriate that [a hearing on the decision to revoke parole] be held at the time at which prediction as to the parolee's ability to live in society without committing antisocial acts is both most relevant and most accurate--at the expiration of the parolee's intervening sentence." Moody, 429 U.S. at 89.

Parole and parole revocation determinations were exclusively within the discretion of the District of Columbia Board of Parole, until the Board was replaced by the United States Parole Commission. See Poteat v. United States, 559 A.2d 334, 336 (D.C. 1989). In Poteat, the District of Columbia Court of Appeals affirmed the trial court's holding that it did not have the power to stay execution of a parole violator warrant. Id. It concluded that the decision to issue parole violator warrants and to terminate parole was within the sole authority of the Board. Id. ("Unlike the terms and conditions of probation, which are committed to the trial court's discretion, the decision to terminate parole and to issue warrants for violation of the conditions of parole is within the sole authority of the Board of Parole.") (citing D.C. CODE § 24-104 (1981); 28 DCMR §§ 100.2, 100.4 (1987); other internal citations omitted).[5]

---

[5] Several circuits have found that the United States Parole Commission has similar discretion over decisions regarding revocation of parole. See, e.g., Santa v. Tippy, 14 F.3d 157, 160 (2d Cir. 1994) (holding that the Commission has the discretion to choose to run a parole violation term consecutive to a new sentence where parole is revoked after imposition of the new sentence); Tijerina v. Thornburgh, 884 F.2d 861, 864 (5th Cir. 1989) (holding that the Commission has exclusive jurisdiction to determine whether parole violator's sentence will run consecutively or concurrently to new sentence); Lepera v. United States, 587 F.2d 433, 435 n.1 (9th Cir. 1978) ("The district court could not require the parole violation sentence to run concurrently with the conspiracy sentence because the Parole Board has the sole authority to decide when a parole violation warrant will be executed."); see also Zerbst v. Kidwell, 304 U.S. 359, 361 (1938)("Parole Board and its members have been granted sole authority to issue a warrant for the arrest and return to custody of a prisoner who violates his parole.").

At the time Lyons was released on parole on May 7, 1993, he had 3274 days remaining on the Old Sentence. While he was on parole on the Old Sentence, he was arrested for and convicted of a subsequent offense. He served the entire sentence, i.e. the New Sentence, for that subsequent offense. The Board executed the parole violator warrant, thus revoking Lyons' parole on his Old Sentence, after his completion of the New Sentence on August 14, 1996. Lyons resumed serving the Old Sentence at that time. As discussed supra, the Board acted within its authority when it deferred execution of the parole violator warrant until completion of his New Sentence. Accordingly, Lyons was not in custody on his Old Sentence when his New Sentence was imposed. The New Sentence could not run concurrent to a sentence that had not been, and at that point may never have been, resumed.

Lyons' argument regarding his good time credits is similarly unpersuasive. Under District of Columbia statute, if a prisoner's parole is revoked, the prisoner, unless reparoled, must serve the remainder of his sentence without credit for good time credits earned before the revocation of parole. See D.C. CODE § 24-406(a) (formerly § 24-206) ("If the order of parole shall be revoked, the prisoner, unless subsequently reparoled, shall serve the remainder of the sentence originally imposed less any commutation for good conduct which may be earned by him after his return to custody.") (emphasis added); see also Mayo v. United States Parole Comm'n, No.

05-0860, 2005 U.S. Dist. LEXIS 35715, at *2-3 (D.D.C. July 22, 2005). The statute does not allow for discretion. Pursuant to its plain terms, good time credits do not reduce a prisoner's full-term sentence date, and are forfeited upon revocation of parole.

Accordingly, any good time credits Lyons may have earned do not, as he suggests, alter the maximum term of his sentence. Nor is he entitled to have any good time he may have received prior to his being released on parole credited to his Old Sentence since the good time credits that he earned prior to his release on parole were forfeited upon his parole revocations.

Lyons further argues that he "was never given a hearing as required to determine whether the good time credits [he] had accrued should be forfeited." Pet. at 6. As discussed, District of Columbia law requires the forfeiture of good time credits upon revocation of parole. D.C. CODE § 24-406(a). Lyons does not challenge the validity of the revocation hearing itself. See Def.'s Opp'n Ex. C, November 19, 1996 Revocation Hearing Record. Accordingly, because Lyons' parole was lawfully revoked after an institutional hearing by the Board, he was not constitutionally entitled to a further hearing concerning the forfeiture of his previously-earned good time credits. See Duckett v. Quick, 282 F.3d 844, 849 (D.C. Cir. 2002). There is no authority for the proposition that a prisoner is entitled to a separate, independent

hearing to determine whether or not previously-earned good time credits should be forfeited.

### III.  CONCLUSION

For the foregoing reasons, Lyons' Petition for a Writ of Habeas Corpus is **denied** and this case is **dismissed**.  An Order will issue with this Opinion.


July 10, 2007
/s/
Gladys Kessler
United States District Judge